UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE ANN TYREE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )    Case No. 4:18-CV-1786-SPM |
| | ) |
| | ) |
| | ) |
| ANDREW M. SAUL, [1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of

Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying the

application of Plaintiff Christine Ann Tyree ("Plaintiff") for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented

to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 6).

Because I find the decision denying benefits was supported by substantial evidence, I will affirm

the Commissioner's denial of Plaintiff's application.

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. Pursuant to
Federal Rule of Civil Procedure 25(d), Commissioner Saul is substituted for Nancy A. Berryhill
as defendant in this action. No further action needs to be taken to continue this suit by reason of
the last sentence of 42 U.S.C. § 405(g).

# I.   PROCEDURAL BACKGROUND

On July 14, 2015, Plaintiff applied for DIB, alleging a disability onset date of June 22, 2015. (Tr. 209-10). On January 8, 2016, her application was initially denied. (Tr. 142-46). On February 24, 2016, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ") (Tr. 149-50). On November 20, 2017, the ALJ held a hearing on Plaintiff's claims. (Tr. 81-123). On February 21, 2018, the ALJ issued an unfavorable decision. (Tr. 9-27). On April 11, 2018, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 207-08). On August 24, 2018, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). The decision of the ALJ stands thus as the final decision of the Commissioner of the Social Security Administration.

# II.   FACTUAL BACKGROUND

On November 20, 2017, Plaintiff testified before the ALJ as follows. Her birth date is June 16, 1968, and she was forty-nine years old at the hearing. (Tr. 86). She graduated from high school and has an associate's degree in industrial engineering that she completed around 2015, which gives her the ability to analyze problems with machines in a factory and then fix them so they are up and running. (Tr. 87-88). She does not think she could work in that field now, because she cannot sit very long, she cannot stand very long, and her hands do not have enough strength. (Tr. 89). Plaintiff's last job was as an analysis and repair tech; she did that job for about five years. (Tr. 89-90). She could no longer do that job because she could not handle the tools, because her hands cramp up, and because she could not stand still enough to stay at her workstation; she also has to constantly walk around, sit, or sleep. (Tr. 90-91). Prior to that job, she worked as a cashier and did stocking at Lowe's. (Tr. 91).

Plaintiff has been diagnosed with fibromyalgia, which means she hurts all the time, especially if she is touched or stands too long. (Tr. 95). Her arms, legs, and hands are usually the worst, but she also has pain in her feet, ankles, legs, hips, and shoulders. (Tr. 95-96). If she walks, she gets shortness of breath and shooting pain; she does not know whether that is related to fibromyalgia. (Tr. 95). Once in a while, she has a good day with no pain, and then she will try to do the things she normally wouldn't, and she ends up feeling worse for days. (Tr. 96-97). Plaintiff also has irritable bowel syndrome, indigestion, acid reflux, and bladder control problems. (Tr. 101-03, 107). Plaintiff has hives that itch and burn, and it is unclear what brings them on. (Tr. 105). Plaintiff also has chronic obstructive pulmonary disease and mild mitral regurgitation. (Tr. 109). She gets headaches in the front of her head, daily or every three to four days. (Tr. 106).

At the hearing, Plaintiff was using a heater for her hands, because they hurt worse when they get cold. (Tr. 97). At home, she typically sits with gloves on, because otherwise her hands cramp up and she cannot use them. (Tr. 97). When that happens, there is shooting pain, and sometimes swelling, though she says she can never get to the doctor in time to get the swelling on record. (Tr. 97). When her hands get cold, they hurt worse, and she drops things often. (Tr. 98).

Plaintiff is constantly tired many days and usually does not feel refreshed after sleep. (Tr. 101, 105-06). She has a "brain fog" that causes her to not remember words or not remember what someone is talking about, and she has memory problems. (Tr. 101). Plaintiff also has anxiety and depression; on the worse days, she hides from her children and grandchildren. (Tr. 103).

Most days, Plaintiff lies on the couch in the living room, sleeps for three or four hours during the day, and goes back to sleep by nine o'clock or so, because it hurts when she tries to do things. If she has a good day and tries to vacuum the floor of her small house, then the next two days she will be out of commission. (Tr. 98-99). She can unload and reload the dishwasher on a

good day. (Tr. 99). She does not do laundry because it hurts her to get up and down the stairs to get the laundry. (Tr. 99). She cannot sit with her feel completely down for very long; she has to get up and move in two to ten minutes, depending on the day. (Tr. 99). She can stand in one spot for a few minutes and could walk for three to five minutes on a bad day. (Tr. 100). She takes Aleve before she goes to bed to get the pain to stop enough that she can fall asleep. (Tr. 100). She spends her days in a recliner because otherwise the swelling in her feet and ankles get so bad that she can barely stand. (Tr. 100-01). Plaintiff's husband brushes her hair for her and helps her put on her bras. (Tr. 107). Plaintiff drives occasionally but usually her husband or mother does the driving. (Tr. 107-08). She can hold a gallon of milk if she absolutely needs to, but if she does not use two hands, she will drop it. (Tr. 110). Plaintiff used to sew, but now her hands cannot do that. (Tr. 110). She usually does not read anymore, because she cannot hold a book and her mind does not get into books anymore. (Tr. 110-11).

For her fibromyalgia, Plaintiff has tried Cymbalta and Gabapentin, but they caused the swelling of her feet and ankles to get worse. (Tr. 107-08). Lyrica caused her to almost stop breathing at a higher dose. (Tr. 108).

Plaintiff's medical records show that she has been undergoing regular treatment for fibromyalgia and related issues for several years. The record contains opinion evidence regarding Plaintiff's ability to function from Plaintiff's treating physician, Dr. William Fritz, and from an examining psychologist, Dr. Thomas Spencer. The Court will cite specific portions of the medical records in the discussion below as necessary to address the parties' arguments.

### III.     STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health*

& *Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the

Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff met the insured status requirement of the Act through December 31, 2017, and that she did not engage in substantial gainful activity during the period between her alleged onset date of June 22, 2015

through her date last insured. (Tr. 14). The ALJ found that through the date last insured, Plaintiff had the severe impairments of fibromyalgia, obesity, chronic obstructive pulmonary disease, chronic urticaria, anxiety, and depression, and that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 14-15). The ALJ found that Plaintiff had the following RFC:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: the claimant can frequently reach, handle, finger, and feel; occasionally climb ramps and stairs, balance, crouch, and stoop; and never kneel, crawl, or climb ladders, ropes, and scaffolds. The claimant must have a sit/stand option for five minutes two times an hour while remaining on task at the work station. The claimant can never be exposed to unprotected heights or hazardous machinery; no exposure to extreme cold; no more than occasional exposure to pulmonary irritants, vibrations, or extreme heat. The claimant is limited to simple, routine tasks.

(Tr. 17). At Step Four, the ALJ found Plaintiff was unable to perform any past relevant work. (Tr. 23). However, at Step Five, relying on the testimony of a vocational expert, the ALJ found that there are other jobs existing in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as addresser (Dictionary of Occupational Titles No. 209.587-010, 8,449 jobs in the national economy), document preparer (Dictionary of Occupational Titles No. 249.587-018, 66,916 jobs in the national economy), and information clerk (Dictionary of Occupational Titles No. 237.367-046, 54,348 jobs in the national economy). (Tr. 23-24). Thus, the ALJ found that Plaintiff was not under a disability, as defined in the Act, from June 22, 2015, through the date last insured of December 31, 2017. (Tr. 24).

## V.   DISCUSSION

Plaintiff makes numerous challenges to the ALJ's decision, arguing that that the ALJ did not properly credit the opinion of Plaintiff's treating physician; that the ALJ did not properly apply

Social Security Ruling 12-2p in evaluating Plaintiff's fibromyalgia; that the ALJ did not properly credit several specific allegations of physical and mental symptoms; and that the ALJ erred by taking a mechanical approach to the grid rules in light of Plaintiff's borderline age without expressly discussing the factors she considered.

A.    **Standard for Judicial Review**

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894

(8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**B.  The ALJ's Evaluation of Plaintiff's Treating Physician's Opinion**

Plaintiff's first argument is that the ALJ did not give sufficient weight to the opinion of Plaintiff's treating physician, Dr. William Fritz. Under the regulations applicable to Plaintiff's claim, if the Social Security Administration finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." 20 C.F.R. § 404.1527(c)(2).[2] When the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, and the level of specialization of the source. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ may discount a treating physician's opinion where, for example, "other medical assessments are supported by better or more thorough medical evidence," *Goff,* 421 F.3d at 790 (internal quotation marks omitted), or the opinion "is inconsistent

_____

[2] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the rule that a treating source opinion is entitled to controlling weight has been eliminated. *See* 20 C.F.R. § 404.1520c(a). Because Plaintiff's claim was filed in 2015, the Court will apply the version of the regulations that applies to claims filed before March 27, 2017.

with the physician's clinical treatment notes." *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). "When an ALJ discounts a treating physician's opinion, [the ALJ] should give good reasons for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) (internal quotation marks omitted).

On January 25, 2016, Dr. Fritz completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form for Plaintiff. (Tr. 440-45). Dr. Fritz opined that Plaintiff could lift and carry up to 20 pounds occasionally and never more (Tr. 440); could sit for 20 minutes at a time and for two hours total in a work day; could stand for 20 minutes and a time and less than an hour total in a work day; and could walk for 30 minutes and an hour total in a work day. (Tr. 441). He stated that she was "unable to work because of the chronic pain, exacerbated by effort/activity." (Tr. 441). He found that she could reach, handle, and push/pull occasionally and could frequently finger and feel; the limitations were due to chronic pain and weakness. (Tr. 442). He opined that she could occasionally operate foot controls. (Tr. 442). He found that she could frequently stoop, occasionally climb stairs and ramps, occasionally balance, occasionally crawl, and never climb ladders or scaffolds or kneel or crouch. (Tr. 443). He found Plaintiff was unable to hear and understand simple oral instructions and communicate simple information. (Tr. 443). He opined that she could frequently operate a motor vehicle and could occasionally tolerate exposure to moving mechanical parts, dust, odors, fumes, pulmonary irritants, extreme heat, and vibrations. (Tr. 444). She could never tolerate extreme cold or unprotected heights. (Tr. 444). He suggested that she would have trouble in cold humidity and wetness, but warm would be ok; that frequent exposure to dust or fumes might cause wheezing; and that extreme heat might cause hives. (Tr. 444). He found that she could perform activities like shopping with assistance, traveling without a companion but locally only, ambulating without assistive devices, using public

transportation, climbing a few steps at a reasonable pace, preparing simple meals, caring for personal hygiene, and sorting and using paper files. (Tr. 445). She could not walk a block at a reasonable place on rough or uneven surfaces. (Tr. 445).

The ALJ discussed Dr. Fritz's opinion in detail and gave it "some weight." (Tr. 21). The ALJ found that Dr. Fritz's opinion that Plaintiff could frequently finger and feel bilaterally was supported by the medical evidence and that the medical evidence also supported limitations in some postural activities, limitations Plaintiff's ability to tolerate cold, and Plaintiff's ability to tolerate pulmonary irritants. (Tr. 21). However, the ALJ found there was "no medical evidence to support hearing limitations of any sort." (Tr. 21). She also found that the medical evidence did not support the limitation that Plaintiff could only sit for a total of two hours or walk for a total of one hour in an eight-hour day, finding that a sit/stand option in the RFC would enable Plaintiff to sit for more time during the day. (Tr. 21).

After careful review of the record, the Court finds that the ALJ gave good reasons, supported by substantial evidence, for her discounting of Dr. Fritz's opinion, bringing her assessment of that opinion within the available zone of choice.

The Court first notes that the ALJ did not entirely disregard Dr. Fritz's opinion; instead, she gave it "some weight" and incorporated many of the limitations in the opinion into the RFC. The ALJ limited Plaintiff to sedentary work, which is more restrictive than Fritz's opinion that Plaintiff could lift and carry up to 20 pounds occasionally and never more. (Tr. 17, 440).[3] Although

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

the ALJ did not fully adopt all of Dr. Fritz's opinions regarding Plaintiff's sitting, standing, and walking limitations, she did find significant limitations in those areas, limiting Plaintiff to sedentary work with a sit/stand option for five minutes, two times an hour. (Tr. 17). The ALJ also adopted Dr. Fritz's opinion that Plaintiff could only occasionally climb stairs and ramps and could never climb ladders or scaffolds. (Tr. 17, 21, 443). The ALJ accepted Dr. Fritz's opinion that Plaintiff could not tolerate exposure to extreme cold or unprotected heights, finding in the RFC that Plaintiff could never be exposed to extreme cold, unprotected heights, or hazardous machinery. (Tr. 17, 21, 444). She adopted Dr. Fritz's opinion that frequent exposure to extreme heat or pulmonary irritants could cause problems for Plaintiff, limiting Plaintiff to no more than occasional exposure to pulmonary irritants, vibrations, or extreme heat. (Tr. 17, 21, 444). She also adopted Dr. Fritz's opinion that Plaintiff could frequently (but not continuously) finger and feel. (Tr. 17, 21, 442). It is clear that the ALJ gave significant weight to Dr. Fritz's opinions regarding the effects Plaintiff's fibromyalgia would have on her ability to function. *See Choate v. Barnhart*, 457 F.3d 865, 869-70 (8th Cir. 2006) ("The ALJ determined that [the plaintiff] is limited to walking or sitting for six hours in an eight-hour workday and can perform light work only in well-ventilated environments without extreme temperatures or fumes, odors, gases, and dusts. These are significant limitations, demonstrating that the ALJ gave some credit to the opinions of the treating physicians where the opinions were supported by the objective medical evidence." ); *Ellis v. Barnhart,* 392 F.3d 988, 994 (8th Cir. 2005) (noting that a restriction to sedentary work "in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating physician's] medical opinions").

To the extent that the ALJ did not credit all of Dr. Fritz's opinions, she gave reasons for doing so that were supported by substantial evidence. First, the ALJ reasonably found that Dr.

Fritz's opinion that Plaintiff did not have the ability to hear and understand simple oral instructions or to communicate simple information was unsupported by the record. (Tr. 21). Dr. Fritz's own notes do not contain support for those limitations, and other evidence in the record contradicts them. Both an examining internist, Dr. Raymond Leong, and an examining psychologist, Dr. Thomas Spencer, found Plaintiff's speech to be within normal limits. (Tr. 433, 438). Dr. Spencer also noted that he observed "no expressive or receptive language deficit" in Plaintiff and found that Plaintiff was capable of understanding and remembering simple to moderately complex instructions. (Tr. 438). In light of the findings of Dr. Leong and Dr. Spencer, and the absent of relevant findings from Dr. Fritz, it was appropriate for the ALJ to discount this aspect of Dr. Fritz's opinion. *See Goff*, 421 F.3d at 790-91 ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount [the treating physician's] opinion."); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (affirming the ALJ's decision to discount the opinion of a treating physician where it contained limitations that "stand alone," "were never mentioned in [the physician's] numerous records of treatment," and were not "supported by any objective testing or reasoning which would indicate why the claimant's functioning need be so restricted"). "[A]n ALJ may discount a treating source opinion that is unsupported by treatment notes." *Aguiniga v. Colvin*, 833 F.3d 896, 902 (8th Cir. 2016) (internal citation omitted).

Second, the ALJ reasonably found that the medical evidence did not support Dr. Fritz's opinion that Plaintiff could only sit for two hours or walk for one hour in an eight-hour workday. (Tr. 21). As the ALJ acknowledged, Plaintiff was diagnosed with fibromyalgia and was observed on some occasions to have diffuse tenderness and a slow gait (Tr. 19-20, 434, 558, 592), and she regularly complained to her doctors of pain and fatigue (Tr. 399, 407, 461, 469, 482, 495, 520, 555, 586, 638, 652, 775, 857). These notes provide some support for Dr. Fritz's opinion that

Plaintiff would have significant limitations on the ability to sit, stand, and walk. However, in partially discounting Dr. Fritz's opinions, it was reasonable for the ALJ to consider the fact that almost all of the other physical findings and observations in the record were normal or nearly normal. Dr. Fritz's own treatment notes showed almost entirely normal physical findings. (Tr. 399, 406, 460, 471, 481, 522, 610, 777, 809, 837-38, 859). Additionally, Dr. Leong's examination showed that although Plaintiff's gait was slow and she was tender diffusely, Plaintiff was in no apparent distress; that she was able to walk 50 feet unassisted; that she was able to tandem walk and hop, to heel walk, and to toe walk; that she was able to squat 3/4 of the way down; that she had no spasms; that all joints showed full range of motion; that there was no muscle atrophy; that Plaintiff had no difficulties getting on and off the exam table; that her sensation was normal; and that she had no peripheral edema in her lower extremities. (Tr. 432-34). Another examiner noted that Plaintiff did not look to be in a great deal of physical distress and that she ambulated without assistance and with no obvious difficulty. (Tr. 438). The Eighth Circuit Court of Appeals has upheld the discounting of a medical opinion based in part on the lack of objective findings such as normal muscle strength and full range of motion, even in cases involving fibromyalgia diagnoses. *See Flynn v. Astrue*, 513 F.3d 788, 793 (8th Cir. 2008) (considering objective findings of normal muscle strength and good mobility, along with other evidence, in affirming ALJ's decision to discount the opinion of a treating physician in a case involving a plaintiff with fibromyalgia); *Casey v. Astrue*, 503 F.3d 692, 693-694 (8th Cir. 2007) (considering mild and normal objective findings in affirming the ALJ's decision to discount the opinion of a consulting examiner who offered opinions related to fibromyalgia).

In addition, although Dr. Fritz noted that the limitations in his opinion related to Plaintiff's use of her hands were supported in part by Plaintiff's "weakness," his notes do not contain any

findings of weakness in Plaintiff's hands. (Tr. 442). Dr. Leong, who did evaluate Plaintiff's hand strength, found that Plaintiff's pinch strength, arm, leg and grip strength were 4+/5 throughout, and that she could oppose thumb to each finger in both hands. (Tr. 434). It was reasonable for the ALJ to credit Dr. Leong's assessment, which was based on testing, over the assessment of Dr. Fritz, the basis for which was not clear from his notes. *See Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) ("[W]e have upheld an ALJ's decision to discount or even disregard the opinion of a treating physician where other medical assessments 'are supported by better or more thorough medical evidence'"); *cf. Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (affirming ALJ's rejection of treating physician's opinions about plaintiff's exertional limitations that "[were] not reflected in any treatment notes or medical records.").

It is also significant that Dr. Fritz offered his opinions on a check-box form and provided very little elaboration or detail regarding the basis for his opinions. Although the form contained a section for Dr. Fritz to identify the particular medical or clinical findings that supported his sitting, standing, and walking limitations, he left that section blank. (Tr. 441). The Eighth Circuit has repeatedly found that opinions offered in conclusory, checkbox form are entitled to less weight. *See Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (affirming the ALJ's decision to discount the opinion of a treating physician in part because of the form in which it was offered; stating, "[W]e have recognized that a conclusory checkbox form has little evidentiary value when it 'cites no medical evidence, and provides little to no elaboration'") (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)). The fact that Dr. Fritz did not complete all the sections of the form also undermines its evidentiary value. *See Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (affirming the ALJ's decision to discount the opinions of treating physicians in part

because "the checklist format, generality, and incompleteness of the assessments limit their evidentiary value").

For all of the above reasons, the Court finds that the ALJ gave good reasons to support her decision to partially discount Dr. Fritz's opinion, and those reasons were supported by substantial evidence. The ALJ's decision makes clear that she considered all of the relevant evidence in assessing Dr. Fritz's opinion. She weighed Dr. Fritz's opinion along with the other evidence, including the other opinion evidence, and it is not the role of this Court to reweigh that evidence. The ALJ's assessment fell within the "available zone of choice." *See Hacker v. Barnhart*, 459 F.3d 934, 937-38 (8th Cir. 2006).

### C. The ALJ's Application of Social Security Ruling 12-2p

The Court next considers Plaintiff's argument that the ALJ did not properly apply Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869 (July 25, 2012). SSR 12-2p provides guidance for the Commissioner regarding how to consider fibromyalgia at all steps of the disability evaluation process. Plaintiff points out that the ruling requires the ALJ to determine the intensity and persistence of the person's pain and to consider all of the evidence in the record, including the person's daily activities and the attempts to obtain medical treatment for the symptoms. Plaintiff suggests that the ALJ did not really consider the extent of the care that Plaintiff had sought with regard to her pain from Dr. Fritz and Dr. Temperano.

After careful review of the ALJ's decision and the record as a whole, the Court finds that the ALJ properly applied SSR 12-2p and that the ALJ's evaluation of Plaintiff's fibromyalgia-related symptoms was supported by substantial evidence in the record as a whole. The Court first notes that the ALJ found that Plaintiff's fibromyalgia was a severe, medically determinable

impairment, and the ALJ expressly recognized that she had considered SSR 12-2p in evaluating the effects of the impairment. (Tr. 14, 22).

SSR 12-2p requires the ALJ to "evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work," and notes that "[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, [the ALJ] consider[s] all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms." SSR 12-2p, 2012 WL 3104869, at *5. SSR 12-2p further directs the ALJ to perform the analysis of subjective complaints set forth in 20 C.F.R. § 404.1529(b) and (c), which requires the ALJ to consider factors including objective evidence; daily activities; the location, duration, frequency, and intensity of symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medications; the treatments other than medications; any measures the claimant uses to relieve pain; and other relevant factors. *See* SSR 12-2p, 2012 WL 3104869, at *5 & n. 17; 20 C.F.R. 404.1529(c)(2), (3). Although an ALJ must consider the objective evidence in evaluating subjective complaints, an ALJ "may not discount a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)). The Court defers to the ALJ's assessment of the claimant's subjective complaints if that assessment is supported by good reasons and substantial evidence. *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018).

The ALJ's analysis of Plaintiff's subjective complaints was consistent with SSR 12-2p and the relevant regulations, and it is supported by substantial evidence. The ALJ did give significant weight to Plaintiff's subjective complaints of pain and other fibromyalgia-related symptoms. The ALJ discussed Plaintiff's alleged symptoms in detail, including her allegations of extreme fatigue, extreme pain, brain fog, problems walking and standing, problems lifting, squatting, bending, reaching, sitting, kneeling, and climbing stairs; difficulty stating still; shortness of breath; problems typing or writing, difficulty holding books; difficulty with her memory, attention, and concentration problems; and difficulty following written or spoken instructions well. (Tr. 17-22) As discussed above, the ALJ gave significant weight to those complaints, finding that Plaintiff had a very restrictive RFC involving sedentary work with several additional mental and physical limitations, including postural limitations, a limitation on Plaintiff's exposure to cold, a requirement that Plaintiff have a sit/stand option for five minutes two times an hour, and a limitation to simple, routine tasks. To the extent that the ALJ did not credit all of Plaintiff's subjective allegations, that decision was supported by substantial evidence.

First, although the ALJ did not rely exclusively on objective medical evidence, she reasonably considered inconsistencies between Plaintiff's alleged symptoms and the objective medical evidence. (Tr. 34-35). As SSR 12-2p directs, it is proper to consider objective medical evidence in fibromyalgia cases. With regard to Plaintiff's pain, it was reasonable for the ALJ to consider the almost entirely normal findings in Dr. Fritz's treatment notes (Tr. 399, 406, 460, 471, 481, 522, 610, 777, 809, 837-38, 859), the normal and close-to-normal strength, and range-of-motion, and other findings by Dr. Leong in his examination (Tr. 432-34), and the observations the examining psychologist made regarding Plaintiff's physical condition. (Tr. 438). Moreover, contrary to Plaintiff's testimony that she had to lie down during the day because her feet and ankles

swell, examinations after the alleged onset date generally showed no edema. (Tr. 19-20, 100-01, 399, 406, 434, 460, 471, 481, 494, 522, 610, 777, 809, 838, 859). Additionally, with regard to Plaintiff's claimed mental symptoms, the ALJ reasonably considered the objective evidence from a psychologist who conducted testing of Plaintiff and found that her speech was within normal limits, that she was of average intelligence; that she had no impairment in long-term memory; that she completed serial 3s making no errors; and that she had a GAF score of 60-65, indicating only mild to moderate symptoms.[4] *See Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010) (in evaluating subjective complaints, "the absence of objective medical evidence to support the complaints" is a proper factor to consider).

Second, the ALJ reasonably considered the evidence that Plaintiff has reported some improvement in her fibromyalgia symptoms with exercise and medication. (Tr. 19-22, 404, 432, 520, 652), and that she reported feeling worse when she stopped most of her medications or stopped exercising. (Tr. 457, 857). Although Plaintiff's symptoms were certainly not fully resolved by medication or exercise, it was not unreasonable for the ALJ to consider that medications and exercise relieved her symptoms to some extent. *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) ("That [the plaintiff's] medication was effective in relieving her symptoms further supports

---

[4] A Global Assessment of Functioning ("GAF") score is based on a "clinician's judgment of the individual's overall level of functioning." *Hudson v. Barnhart*, 345 F.3d 661, 662 n.3 (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 32 (4th ed. Text Revision 2000) ("*DSM-IV-TR*"). A GAF score of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *DSM-IV-TR* at 34. A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

the ALJ's finding that [the plaintiff's] complaints of disabling depression were not fully credible.").

Third, the ALJ reasonably considered evidence of Plaintiff's daily activities that was not entirely consistent with her allegations. The ALJ gave "significant weight" to the third-party function report of Plaintiff's husband, who noted that Plaintiff is capable of preparing simple meals, doing cleaning and laundry, driving, shopping for groceries for an hour to an hour and a half at a time, paying bills, reading, and visiting with grandchildren. (Tr. 22, 273-76). The ALJ reasonably found these activities were to some extent inconsistent with Plaintiff's claims of extreme pain and fatigue; difficulty sitting, walking, and standing; brain fog; and inability to concentrate. *See Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015) (finding that a fibromyalgia sufferer's daily activities, in conjunction with other inconsistencies with the record, detracted from her claims regarding her subjective allegations); *Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (finding "[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living" raised questions about the weight to give to her subjective complaints)

Fourth, the ALJ discussed evidence showing that Plaintiff was not entirely compliant with her treatment providers' recommendations. (Tr. 20). As the ALJ noted, Plaintiff stopped taking her fibromyalgia medications at times. (Tr. 20, 857). Additionally, in October 2016, Plaintiff's rheumatologist advised Plaintiff to pursue regular aerobic exercise (particularly water aerobics in a warm pool) for her fibromyalgia symptoms, gave her information about scholarships for water exercise classes, and suggested Plaintiff might benefit from physical therapy and assistance with a graded exercise routine. (Tr. 592). Later in the same month, Plaintiff's rheumatologist stated that Plaintiff "seriously needs to start an exercise program." (Tr. 610). However, there is no indication

that Plaintiff followed these recommendations. *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (ALJ properly considered the plaintiff's "resistance to some suggested courses of treatment" in assessing her subjective symptoms); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.").

Finally, contrary to Plaintiff's suggestion that the ALJ did not really consider the extent of the care Plaintiff sought from her physician, the ALJ discussed in detail Plaintiff's visits to her treatment providers, the symptoms she complained of at those visits (including pain, fatigue, crying spells, memory problems, and poor medications); Plaintiff's reports regarding how exercise and medications were or were not helping with those symptoms; and her treatment providers' objective findings at those visits. (Tr. 18-20). The ALJ also discussed in detail Plaintiff's own reports and testimony regarding her limitations, as well as the third-party function report submitted by Plaintiff's husband. (Tr. 17-18, 22). Although Plaintiff may take issue with how the ALJ weighed this evidence, it is apparent that the ALJ considered it in reaching her decision.

As Defendant points out, SSR 12-2p does not provide that fibromyalgia is always or usually disabling, nor does it provide that an ALJ must fully accept all of Plaintiff's subjective complaints. It merely directs the ALJ to consider those complaints in a manner consistent with the relevant regulations. For the above reasons, the ALJ did so, and this Court must defer to that decision even if substantial evidence might have supported a different conclusion. "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the Court] will normally defer to the ALJ's credibility determination." *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir.2008). Here, the

ALJ explicitly discredited Plaintiff's subjective complaints and supported that decision with substantial evidence in the record, and the Court defers to the ALJ's assessment.

### D. The ALJ's Evaluation of Plaintiff's "Brain Fog," Hand Problems, Need to Rest, and Need to Miss Work

The Court next considers Plaintiff's arguments that the ALJ did not properly evaluate the effects of her "brain fog," her hand problems, her need to rest during the day, and her need to miss work frequently. These appear to be simply specific examples of Plaintiff's objections to the ALJ's evaluation of Dr. Fritz's opinions and/or Plaintiff's subjective allegations, which the Court addressed above. However, in the interest of completeness, the Court will also address them here.

Plaintiff first argues that the ALJ failed to take into account the impact Plaintiff's brain fog caused by fibromyalgia would have on her ability to stay on task. The Court disagrees. The ALJ discussed Plaintiff's reports of brain fog and other mental symptoms, and she limited Plaintiff to simple, routine tasks. (Tr. 15, 17-22). The ALJ's determination that Plaintiff's mental symptoms did not require additional limitations is supported by substantial evidence, including the report of consultative examiner Dr. Spencer indicating that Plaintiff did well on tests of cognition and memory—Plaintiff could recall three of three objects after five minutes of distraction; did not appear to have any impairment in her long-term memory; completed serial 3s making no errors; spelled the word "world" forward and backward; and could manage five digits forward and four backward. (Tr. 438). It is also supported by Dr. Spencer's opinion that Plaintiff was capable of understanding and remembering simple to moderately complex instructions and engaging in and persisting with simple to moderately complex tasks. (Tr. 438). The ALJ's determination that Plaintiff could perform simple, routine tasks is also supported by the statement of her husband that

Plaintiff was capable of engaging in activities requiring concentration such driving, paying bills, and reading books. (Tr. 273-76).

Plaintiff next argues that that the ALJ failed to consider or analyze the problems Plaintiff has with her hands. Again, the Court disagrees. The ALJ discussed Plaintiff's allegations that typing and writing caused her extreme pain in her fingers, hands and arms; that she had arm soreness; that she has to have her husband open jars or cut things for her; that holding a book causes her pain; and that she cannot hold items, because her hands cramp. (Tr. 17-18). However, the ALJ found these complaints only partially supported by the record, finding that she could frequently reach, handle, finger, and feel. (Tr. 17). This conclusion was supported by substantial evidence, including Dr. Fritz's opinion that Plaintiff could frequently finger and feel (Tr. 442), the absence of treatment or examination notes indicating weakness or problems with Plaintiff's hands, the findings of the consultative examiner Plaintiff's pinch strength, arm, leg and grip strength were 4+/5 throughout and that she could oppose thumb to each finger in both hands (Tr. 434), and the negative hand X-rays (Tr. 750-51).

Finally, Plaintiff argues that the ALJ did not properly credit the evidence that Plaintiff would need to rest repeatedly during the day and would frequently miss work. The ALJ did partially credit Plaintiff's need to rest repeatedly during the day by limiting her to sedentary work, which involves mostly sitting, and she included a sit/stand option that would permit Plaintiff to change positions to be comfortable. However, the ALJ was not obligated to fully credit these subjective allegations. As discussed above, the ALJ reasonably considered all of the evidence— including the opinion evidence, the objective medical evidence, and the evidence of Plaintiff's daily activities, in giving only partial weight to those allegations and determining that Plaintiff could perform a limited range of sedentary work.

### E. The ALJ's Decision to Mechanically Apply the Grid Rules Despite Plaintiff's Borderline Age Situation

Plaintiff's final argument is that because she was is in a "Borderline Age" situation, the ALJ erred by not discussing the factors underlying her decision not to consider Plaintiff as being in a higher age category than her chronological age would indicate.

The Medical-Vocational Guidelines (the grids) describe three age categories: a younger person (under age 50), a person closely approaching advanced age (age 50-54), and a person of advanced age (age 55 or older). 20 C.F.R. § 404.1563(c)-(e). The regulations provide that if a claimant is "within a few days to a few months of reaching an older age category . . . [the ALJ] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case." 20 C.F.R.§ 404.1563(b). The period "a few days to a few months" generally means "a period not to exceed six months." Hearings, Appeals, and Litigation Law Manual (HALLEX) I-2-2-42, Borderline Age, 2016 WL 1167001, at *1 (March 25, 2016). The ALJ takes a "sliding scale" approach in determining which age category to use, and "to support the use of the higher age category, the claimant must show that the [relevant factors] have a progressively more adverse impact on his or her ability to adjust to other work as the period between the claimant's actual age and attainment of the next higher age category lengthens." *Id.* at *2. Relevant factors include how close the claimant is to the next higher age category, whether the claimant has an education level below the high school level, past relevant work history, and RFC limitations that adversely affect the occupational base but do not substantially erode it. Program Operations Manual Systems (POMS) DI 25015.006, Borderline Age, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015006.

Under Eighth Circuit law, an ALJ's failure to demonstrate that he or she gave any consideration to whether to apply the higher age category may require reversal. *Phillips v. Astrue*,

671 F.3d 699, 707 (8th Cir. 2012) (remanding for further consideration of whether a claimant who was four months away from a higher age category should have been considered in a that age category; stating, "Because we are unable to determine from the record whether the Commissioner considered whether Phillips should be moved to the higher age category, we remand the case for further proceedings"). *See also Woods v. Saul*, No. 4:18 CV 1431 CDP, 2019 WL 4169356, at *4 (E.D. Mo. Sept. 3, 2019) (remanding the plaintiff was in a borderline age situation and the ALJ's decision was "silent" on the question of whether the ALJ had considered that situation). However, the Eighth Circuit has also held that "detailed findings in borderline situations are not necessary" and has noted that "a mere statement by the Commissioner that he considered the borderline situation would likely suffice." *Phillips*, 671 F.3d at 707.

The parties agree that Plaintiff was in a borderline age situation here. Her birth date is June 16, 1968; thus, as of her date last insured (December 31, 2017), she was five months and 16 days away from turning 50. In her decision, the ALJ did indicate that she considered the borderline age situation. She stated, "Having considered the claimant's age at the time of this decision and all relevant factors, I have considered a nonmechanical application of the grid rules. I find no compelling factors to support a nonmechanical application of the grid rules in this decision." (Tr. 23). Under *Phillips*, detailed findings are not necessary, and the ALJ's acknowledgement that she considered whether to mechanically apply the grid rules in light of Plaintiff's age was sufficient. Moreover, Plaintiff does not make any argument as to why the ALJ's decision not to apply a higher age category was not supported by substantial evidence. Plaintiff identifies no vocational factors that would have required the ALJ to use the higher age category, and Plaintiff cites no cases finding the higher age category appropriate in analogous situations. Plaintiff was nearly six months away from the next highest age category, placing her barely within the borderline age situation. Thus,

under the "sliding scale" approach, Plaintiff was obligated to show that other factors had a very adverse impact in order to justify the use of the higher age category. Although Plaintiff was limited to sedentary work with additional limitations, she had more than a high school education (including an associate's degree) and significant and recent past work history, both of which weigh against using a higher age category in a borderline age situation. *Cf. Markovic v. Colvin*, No. C15-2059-CJW, 2016 WL 4014683, at *9 (N.D. Iowa July 26, 2016) (ALJ's failure to discuss borderline age issue was harmless where there was " no evidence in the record of progressively worse vocational adversities, claimant had a high school education, and she had a significant work history"). The Court finds substantial evidence to support the ALJ's determination.

Plaintiff argues that the case should be remanded because the ALJ failed to comply with the direction in HALLEX I-2-2-42 that "[t]he ALJ will explain in the decision that he or she considered the borderline age situation, state whether he or she applied the higher age category or the chronological age, and note the specific factor(s) he or she considered." 2016 WL 1167001, at *3. However, the Eighth Circuit recently rejected a plaintiff's suggestion that the ALJ erred by failing to follow a HALLEX requirement, stating, "Even if HALLEX did impose such requirement, it 'is not a regulation. It has no legal force, and it does not bind the SSA.'" *Dols v. Saul*, 931 F.3d 741,749 7 n.4 (8th Cir. 2019) (quoting *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)). *See also Hopper v. Berryhill*, No. 4:16-CV-1309 JMB, 2017 WL 4236974, at *12 (E.D. Mo. Sept. 25, 2017) ("The prevailing jurisprudence in this District is that 'the Eighth Circuit would hold that HALLEX does not have the force of law.'") (quoting *Ellis v. Astrue*, No. 4:07-CV-1031 AGF, 2008 WL 4449452, at *16 (E.D. Mo. Sept. 25, 2008)); *Wilson v. Berryhill*, No. 4:16-CV-1492-CAS, 2018 WL 4636174, at *8 (E.D. Mo. Sept. 27, 2018) (This Court has concluded . . . that "the Eighth Circuit would hold that HALLEX does not have the force of law.' Thus, remand is

only necessary where the ALJ's error results in a decision that is unsupported by substantial evidence") (quoting *Ellis*, 2008 WL 4449452, at *16). Plaintiff provides no authority to support the position that the ALJ's failure to comply with HALLEX, standing alone, warrants remand. Because the ALJ's decision with regard to Plaintiff's borderline age to be supported by substantial evidence, remand is not required based on the ALJ's failure to comply with HALLEX.

**VI.** **CONCLUSION**

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of March, 2020